UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CATHY MINIX, individually, as the natural guardian of Gregory Zick, and as personal representative of the estate of Gregory Zick; and STEVEN ZICK, individually, <br><br>       Plaintiffs <br><br>   vs. <br><br> FRANK CANARECCI, JR., et al., <br><br>       Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   CAUSE NO. 3:05-CV-144- RM |

## OPINION AND ORDER

This matter is before the court on two motions to reconsider the July 3, 2007 order granting judgment on the pleadings and summary judgment on most of Cathy Minix's claims against the defendants. Ms. Minix brings suit under 42 U.S.C. § 1983 as the personal representative of the estate of her deceased son, Gregory Zick, alleging various claims against the defendants for failing to prevent Gregory's suicide during his detainment at the St. Joseph County Jail. In the July 3, 2007 opinion, the court entered judgment in favor of the defendants on all of Ms. Minix's claims except her deliberate indifference claims against Sheriff Canarecci in his official capacity, Dr. David in his individual capacity, and Memorial Home Care. The Memorial defendants and Sheriff Canarecci move the court to reconsider the denial of summary judgment on these claims. For the reasons that follow, the court grants the Memorial defendants' motion and denies the sheriff's motion.

The Memorial defendants filed their motion pursuant to Federal Rule of Civil Procedure 59(e), asking the court to reconsider the denial of their summary judgment motion. Sheriff Canarecci didn't bring his motion to reconsider pursuant to any of the Federal Rules of Civil Procedure, but since his motion challenges the merits of the district court's decision, it must fall under Rule 59(e) or Rule 60(b). United States v. Deutsch, 981 F.2d 299, 300 (7th Cir. 1993). Specifically, "whether a motion filed within 10 days of the entry of judgment should be analyzed under Rule 59(e) or Rule 60(b) depends on the *substance* of the motion, not on the timing or the label affixed to it." Obriecht v. Raemisch, 517 F.3d 489, 493 (7th Cir. 2008) (*citing* Borrero v. City of Chicago, 456 F.3d 698, 701-702 (7th Cir. 2006)).

Rule 59(e) encompasses a motion to reconsider based upon errors of law; Rule 60(b) encompasses a motion to reconsider based upon mistake, inadvertence, surprise, or excusable neglect. *See* McKinney v. United States, 2008 WL 2557470, at *2 (S.D. Ill. June, 24, 2008). Sheriff Canarecci asks the court to reconsider the law's application to the facts of the case, a basis for relief encompassed under Rule 59(e). *See* Osterneck v. Ernst & Whinney, 489 U.S. 169, 174-176 (1989) (concluding that Rule 59(e) was intended to apply to the reconsideration of matters encompassed within the merits of a judgment). The Memorial defendants, on the other hand, raise errors of law, which fall under Rule 59(e), as well as misapprehensions of fact, which fall under Rule 60(b).

A Rule 59(e) motion affords a court a wide range of discretion to correct its own errors, sparing the parties and appellate courts the burden of unnecessary

proceedings. Divane v. Krull Elec. Co., Inc., 194 F.3d 845, 848 (7th Cir. 1999). A court may grant a Rule 59(e) motion to alter or amend a judgment if the movant presents newly discovered evidence that wasn't available at the time of the decision or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact. Sigsworth v. City of Aurora, Ill., 487 F.3d 506, 511-512 (7th Cir. 2007); Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1121 n.3 (7th Cir. 2001). "Manifest error isn't demonstrated by the disappointment of the losing party . . . [i]t is the wholesale disregard, misapplication, or failure to recognize controlling precedent." Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000). The moving party must do more than rehash previously rejected arguments or argue matters that could have been heard during the pendency of the previous motion. County of McHenry v. Ins. Co. of the West, 438 F.3d 813, 819 (7th Cir. 2006) (internal quotations and citations omitted); *see also* Ahmed v. Ashcroft, 388 F.3d 247, 249 (7th Cir. 2004) ("A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind.").

Under Rule 60(b), the court may relieve a party from judgment for several reasons, including mistake as well as "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b). Unlike under Rule 59(e), however, legal error is not a proper ground for relief under Rule 60(b). Gleash v. Yuswak, 308 F.3d 758, 761 (7th Cir. 2002). In addition, relief under Rule 60(b) "is an extraordinary remedy and is granted only in exceptional circumstances."

3

United States v. 8136 S. Dobson St., Chicago, Ill., 125 F.3d 1076, 1082 (7th Cir. 1997) (*quoting* Dickerson v. Bd. of Educ., 32 F.3d 1114, 1116 (7th Cir. 1994)).

*A. The Memorial Defendants' Motion to Reconsider*

The Memorial defendants say the court made manifest errors of law and misapprehensions of fact that warrant reconsideration of the denial of summary judgment on Ms. Minix's claims against Dr. David and Memorial Home Care. First, they argue that the court applied the incorrect legal standard in analyzing Nurse James' potential liability and the Memorial nursing staff's qualifications. Next, they claim that the court mistakenly attributed the opinions of one of Ms. Minix's experts, Dr. Gutierrez, to Dr. Leenaars.

The Memorial defendants argue that although the court said it didn't rely on plaintiffs' expert Dr. Gutierrez's report in its opinion, it mistakenly attributed his conclusions to Ms. Minix's other medical expert, Dr. Leenaars. The Memorial defendants say Dr. Leenaars expressed no opinion on whether the decision to take Gregory off of suicide risk was beyond the scope of the nursing staff's education and training; those conclusions appear in Dr. Gutierrez's report, which is subject to a pending motion to exclude filed by defendants Christine Lonz and the Madison Center. Ms. Lonz and the Madison Center moved to exclude Dr. Gutierrez's report under Federal Rule of Evidence 702, arguing that Dr. Gutierrez's opinions are unsupported, speculative, and unreliable. The County and Memorial defendants joined in that motion.

4

Ms. Minix responds that the portion of Dr. Gutierrez's opinion on which the court relied isn't subject to the motion to exclude. She maintains that the Memorial defendants joined in Madison Center's motion but didn't raise concerns about the opinions offered against their employees, notably failing to challenge the part of the report addressing whether Dr. David inappropriately allowed nursing personnel to assess suicide risks. The court reviews this portion of the Memorial defendants' motion to reconsider under Federal Rule of Civil Procedure 60(b).

The Memorial defendants are right that although the court said it wouldn't consider Dr. Gutierrez's report, the court mistakenly attributed Dr. Gutierrez's conclusions to Dr. Leenaars. Consequently, the court relied on Dr. Gutierrez's report and now must consider the defendants' motion to exclude pursuant to Federal Rule of Evidence 702. Contrary to Ms. Minix's view, the motion to exclude encompasses Dr. Gutierrez's opinions about the nursing staff, as shown by the defendants' objection to all conclusions regarding deliberate indifference to Gregory's health and safety.

Federal Rule of Evidence 702 seeks to assure that "experts' work is admissible only to the extent that it is reasoned, uses the methods of the discipline, and is founded on data." Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 924 (7th Cir. 2000). The rule substantially codifies Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), which made trial judges gatekeepers who ensure that testimony is relevant and protect courtrooms from scientific opinions not based on reliable

principles and methods. Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002). The first prong of this framework evaluates the reliability of the testimony; the second prong evaluates the testimony's relevance—whether the testimony assists the trier of fact with its analysis of any of the issues involved in the case. Ammons v. Aramark Uniform Servs., Inc., 368 F.3d 809, 816 (7th Cir. 2004). The proponent of expert testimony bears the burden of proving its compliance with Rule 702. Daubert v. Merrell Dow, 509 U.S. at 592 n.10.

A judge deciding whether evidence is reliable "must determine whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusions is reliable." Zelinski v. Columbia 300, Inc., 335 F.3d 663, 640 (7th Cir. 2003). The reliability inquiry focuses on the expert's methodology; the soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment.[1] Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000) (*citing* Daubert v. Merrell Dow, 509 U.S. at 595); *see also* Walker v. Soo Line R.R. Co., 208 F3d 581, 587 (7th Cir. 2000) (when addressing whether expert testimony is reliable the district court should not consider the "factual underpinnings" of the

---

[1]Daubert set forth a non-exhaustive list of four factors that are helpful in gauging the reliability of expert testimony: (1) whether the theory is scientific knowledge that will assist the trier of fact and can be tested; (2) whether the theory has been subjected to peer review or publication; (3) the known or potential rate of error and the existence of standards controlling the technique's operation; and (4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community. Clark v. Takata Corp., 192 F.3d 750, 757 n.3 (7th Cir. 1999) (*citing* Daubert v. Merrell Dow, 509 U.S. at 593-594).

testimony but should determine whether "[i]t was appropriate for [the expert] to rely on the test that he administered and upon the sources of information he employed.").

The relevance inquiry requires the district court to consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case. Smith v. Ford Motor Co., 215 F.3d at 719. The expert may satisfy this requirement without opining on the ultimate question to be resolved by the trier of fact. Walker v. Soo Line R.R. Co., 208 F.3d at 587; *see also* Tuf Racing Prods. v. Am. Suzuki Motor Corp., 223 F.3d 585, 593 (7th Cir. 2000) ("Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness.").

The defendants claim Dr. Gutierrez's report is unreliable because it contains bald assertions unsupported by the facts presented. The defendants challenge Dr. Gutierrez's opinions regarding medical malpractice, Gregory's intent and plans to commit suicide, and conclusions about whether the defendants were deliberately indifferent to Gregory's health and safety.[2] The Memorial defendants further argue in their motion to reconsider that even if Dr. Gutierrez's report isn't subject to exclusion, it is nevertheless insufficient to create a genuine issue of material fact

---

[2] Although the defendants' motion to exclude asks that the court strike eight categories of statements and/or opinions from Dr. Gutierrez's report, because it previously rendered judgment on the claims against Ms. Lonz and the Madison Center, the court need only consider the portions of Dr. Gutierrez's report that concern the remaining claims.

7

because Dr. Gutierrez didn't explain why the nursing staff was unqualified to assess suicide risks.

The defendants don't challenge Dr. Gutierrez's qualifications or the relevancy of his opinions, so inquiry focuses on the reliability of his methodology. Dr. Gutierrez relied on numerous materials in forming his opinions, including Gregory's psychiatric admissions records, school records, medical records, state and county jail standards, the medical service provider agreements between the County and Memorial Home Care, and the pleadings and deposition testimony given in this case. This is the type of evidence upon which reasonable experts in the medical field regularly rely. *See* Walker v. Soo Line R.R. Co., 208 F.3d at 588 (explaining that "[m]edical professionals have long been expected to rely on the opinions of other medicals professionals in forming their opinions," including "reports and opinions from nurses, technicians and other doctors") (*citing* Federal Rule of Evidence 703).

An expert's opinion testimony is inadmissible, however, if it "is connected to the existing data only by the *ipse dixit* of the expert." General Elec. Co. v. Joiner, 522 U.S. 136, 145 (1997). "'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" Wendler & Ezra, P.C. v. Am. Int'l Group, Inc., 521 F.3d 790, 791 (7th Cir. 2008) (quoting Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir. 1989)). "A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term. Shapiro may be the world's leading

student of MMDS services, but if he could not or would not explain how his conclusions met the Rule's requirements, he was not entitled to give expert testimony." Zenith Electronics Corp. v. WH-TV Broadcasting Corp., 395 F.3d 416, 419 (7th Cir. 2005).

Dr. Gutierrez bases his opinions on his years of experience as a licensed medical professional and his background in inmate health care services, but he offers only bottom lines without identifying methodologies or principles that led him to those bottom lines. That isn't enough for admissibility under Federal Rule of Evidence 702. The court reconsiders its earlier decision that the motion to strike needn't be decided, and grants the motion to strike Dr. Gutierrez's opinion testimony. Without that testimony, the Estate's case cannot survive the Memorial defendants' summary judgment motion.

*B. Sheriff Canarecci's Motion to Reconsider*

Sheriff Canarecci points to the court's finding that the St. Joseph County Commissioners were entitled to summary judgment on all claims, arguing that he, like they, should not be held liable for Gregory's death. Unlike the County Commissioners, who have no legal authority over the county jail, Sheriff Canarecci bears responsibility for administering the jail's suicide prevention policy in a manner that preserves the inmates' safety. IND. CODE § 36-2-13-15(a).[3]

---

[3] Sheriff Canarecci also points to the court's findings with regard to the jail guards and Deputy Schroeder, whom, like the County Commissioners, weren't responsible for administering the jail's suicide prevention policy.

Accordingly, Sheriff Canarecci may be liable for any constitutional deprivation that occurred as a direct result of that policy. *See* Jackson v. Illinois Med-Car, Inc., 300 F.3d 760, 766 (7th Cir. 2002).

Sheriff Canarecci next argues that the issues of material fact identified in the July 3, 2007 opinion—the acts and omissions that might amount to deliberate indifference—are attributable to the medical defendants, not to any act or policy of the Sheriff. He claims that the first issue of material fact the court identified— the improper classification of inmates for suicide watch — was based on a lack of training and supervision by medical personnel, but the Sheriff wasn't responsible for training the medical staff employed by Memorial Home Care. With regard to the second issue of material fact — the release of inmates from suicide watch — Sheriff Canarecci contends that the court focused only on the acts of Nurse James and Dr. David. Sheriff Canarecci maintains that he had no input or influence over the psychological evaluators' training or the decision when physicians should be contacted in relation to mental health assessments.

Sheriff Canarecci doesn't challenge the court's recitation of the facts or allege the existence of newly discovered evidence, but instead, suggests that the court misapplied the law regarding liability under 42 U.S.C. § 1983. To establish liability against Sheriff Canarecci in his official capacity, Ms. Minix must show that: (1) Gregory suffered a deprivation of a federal right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decisionmaker with policy-making authority, that (3) proximately caused his

constitutional injury. *See* Carpenter v. Office of the Lake County Sheriff, 2007 WL 1296998, at *8 (N.D. Ill. May 2, 2007) (*citing* Ovadal v. City of Madison, 416 F.3d 531, 535 (7th Cir. 2005)); *see also* Phelan v. Cook County, 463 F.3d 773, 789 (7th Cir. 2006) (holding that an unconstitutional policy or custom includes widespread practices that are so permanent and well settled as to constitute a custom or usage with the force of law).

In support of his argument against municipal liability, Sheriff Canarecci cites Woodward v. Correctional Medical Services of Illinois, 368 F.3d 917, 927 (7th Cir. 2004), a case that also involved § 1983 claims against a private medical entity sued in the capacity of a municipal defendant. Sheriff Canarecci notes that the Woodward court didn't include the county sheriff in its analysis of whether the actual practice employed at the jail amounted to deliberate indifference. The Woodward court didn't consider claims against the county sheriff, however, because the Office of the Lake County Sheriff settled before trial. *See* id; *see also* Carpenter v. Office of the Lake County Sheriff, 2007 WL 1296998 at *3 (summarizing the procedural history in Woodward).

Like the county jail in Woodward, the St. Joseph County Jail had a suicide prevention policy in place, but a reasonable trier of fact could find that Sheriff Canarecci didn't ensure that its employees followed the policy. In the July 3, 2007 opinion, the court found that Ms. Minix's claims against Sheriff Canarecci survived summary judgment based on her presentation of evidence of a widespread practice reflecting the defendants' deliberate indifference to Gregory's

11

medical needs: correctional and medical staff could be found to have regularly classified and then released inmates from suicide watch without consulting a psychiatrist or an attending physician. If Sheriff Canarecci was enforcing the jail's suicide prevention policy, Dr. David, who had knowledge of Gregory's prior commitment and current medications, would have been contacted before Gregory's release from the medical unit into the general population. There is a genuine issue of fact as to whether there is a direct link between the Sheriff's failure to ensure that its policies were being followed and Gregory's suicide.

Sheriff Canarecci bears responsibility for establishing and overseeing the county jail's policies and procedures. Sheriff Canarecci was involved at the policy-making level in establishing the suicide prevention policy and recognized deficiencies in the mental health assessment of inmates, but took no affirmative action to correct these issues. As a result, Sheriff Canarecci may be liable for systematic and gross deficiencies in the jail's procedures that amount to deliberate indifference. *See* Carpenter v. Office of the Lake County Sheriff, 2007 WL 1296998 at *11 (denying the defendant's motion for summary judgment based on issues of fact regarding the sheriff's failure to supervise personnel to whom he had delegated the medical care of the county jail's inmates); *see also* Thomas v. Sheahan, 499 F. Supp. 2d 1062, 1096-1097 (N.D. Ill. 2007) (finding a genuine issue of material fact as to whether the county was deliberately indifferent to an inmate based on evidence of its systematic failure to enforce its written policies on

medical requests ). Accordingly, the court will not modify its denial of summary judgment on Ms. Minix's claims against Sheriff Canarecci under Rule 59(e).

Conclusion

For the foregoing reasons, the court GRANTS the defendants' motion to exclude the testimony of Peter Gutierrez, M.D., [Doc. No. 93] and excludes that testimony from the summary judgment record, GRANTS the Memorial defendants' motion to reconsider [Doc. No. 153], and DENIES Sheriff Canarecci's motion to reconsider [Doc. No. 155]. The court DENIES AS MOOT Ms. Minix's motion for trial setting [Doc. No. 100] and Sheriff Canarecci's motion to continue trial [Doc. No. 150], and SETS this matter for a scheduling conference to pick a trial date on Friday, February 13, 2009 at 1:30 pm. (E.S.T.) in the third floor courtroom.

SO ORDERED.

Dated:   January 26, 2009   

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court