UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CATHY MINIX and STEVEN ZICK, )<br>)<br>Plaintiffs )<br>)<br>vs. )<br>)<br>SHERIFF FRANK CANARECCI, JR., )<br>et al. )<br>)<br>Defendants ) | CAUSE NO. 3:05-CV-144 RM |

## OPINION AND ORDER

This matter comes before the court on the plaintiffs' supplementary motion for attorney fees. The plaintiffs lost their son and brother, Gregory Zick, to suicide while he was detained in a St. Joseph County Jail. The plaintiffs commenced an ambitious and broad suit against twenty-six defendants for constitutional violations, negligence, and wrongful death. The alleged constitutional violations included violations of the Article IV § 2 Privileges & Immunities Clause, violations of the Fourteenth Amendment (including Privileges & Immunities, Due Process, and Equal Protection claims), and violations of the Eighth Amendment. This motion follows the court's previous order denying the plaintiffs' motion for attorney fees and granting the plaintiffs leave to amend their petition in order to address the court's concerns stated in its previous order. *See* Order, Dec. 30, 2009 [Doc. No. 215].

I. BACKGROUND

In the course of this litigation, the court granted summary judgment to all defendants on all federal counts, except for Sheriff Frank Canarecci. The court granted summary judgment to Sheriff Canarecci on all federal claims except for the Due Process deliberate indifference count.[1] Shortly before trial on this issue, the plaintiffs and Sheriff Canarecci settled for $75,000, and now the plaintiffs seek fees pursuant to 42 U.S.C. § 1988.

Since entry of the December 30, 2009 order, the court of appeals affirmed this court's summary judgment rulings. *See* Minix v. Canarecci, Nos. 09-2001 & 09-2817, 2010 WL 668893 (7th Cir. Feb. 26, 2010). In mid-2009, this court remanded all state counts against all defendants to state court where the claims continue to pend.

The plaintiffs' first motion for attorney fees sought $744,023.92 in fees and costs. This included $520,959.25 in attorney fees for Hoeppner, Wagner & Evans LLP, $67,013.50 in attorney fees for Konopa & Reagan, P.C., $127,375.80 in expert witness fees, and $28,675.37 in costs under 28 U.S.C. § 1920.

In denying the plaintiffs' first petition, the court's primary concern was not the size of the attorney fee request per se. Rather, the court's concern was that the plaintiffs' success was rather limited, rendering a full fee award excessive. The

---

[1] In its December 30, 2009 order, the court mistakenly referred to this as the Eighth Amendment deliberate indifference count, but the Due Process Clause, and not the Eighth Amendment, applies to detainees who have not been convicted of a crime.

court held that Hensley v. Eckerhart, 461 U.S. 424 (1983), contained the relevant standards for determining the plaintiffs' attorney fees. The plaintiffs' fee request cited, but didn't squarely address, the Hensley standards as understood by our court of appeals, and the court directed the plaintiffs to address these standards in any ensuing petition for attorney fees they might file.

The plaintiffs argue that attorney fee awards don't have to be proportionate to the damages award obtained, partly because civil rights actions vindicate constitutional rights and benefit the public at large, and partly because full fee awards are needed to encourage plaintiffs to bring meritorious claims and to encourage their counsel to fully prosecute those claims. They suggest that a "far-reaching" public benefit has been obtained here through systemic changes at the jail and deterrence of future constitutional violations.

The plaintiffs further argue that hours spent on unsuccessful portions of the litigation shouldn't be cut from their bill because this litigation involved a common core of facts and related legal theories. For example, the plaintiffs responded to three separate motions for summary judgment filed by the three "groups" of defendants (Madison Center defendants, Memorial Home Care defendants, and St. Joseph County defendants) with a single brief and a single recitation of the facts. The plaintiffs argue that in meeting a tenacious defense, it only stood to reason that they expend the necessary resources to fully prosecute their claims.

In response to the court's previous order, the plaintiffs cut some hours from their bills as being related only to their state law claims, but their request is

3

substantially the same. Their supplemental motion seeks $697,084.92 in fees and costs: $474,020.25 plus prejudgment interest for Hoeppner Wagner & Evans LLP, $67,013.50 plus prejudgment interest for Konopa & Reagan, P.C., $127,375.80 in expert witness fees, and $28,675.37 in costs.

Sheriff Canarecci argues that the more than 150 pages of bills submitted are overbroad, duplicative, sometimes exaggerated, and account for significant time devoted to matters having nothing to do with Sheriff Canarecci. Even after the plaintiffs' amendment of their bill, Sheriff Canarecci objects to the bill[2] because he finds numerous entries remaining on the bill in which time is devoted solely to plaintiffs' claims against Memorial Home Care or Madison Center, or in which time is lumped together in a way that makes it impossible to distinguish what time was spent on issues related to Sheriff Canarecci and what time was spent on other claims. Sheriff Canarecci objects to awarding expert fees to Peter Gutierrez, M.D. because the court disqualified him as an expert before trial. Sheriff Canarecci objects to awarding expert fees to Antoon Leenaars, Ph.D., who stated an opinion that Nurse Jeanne James was negligent, and to Daniel Kennedy, Ph.D., whose expert qualifications had been taken under advisement by the court when the case settled.

---

[2] Sheriff Canarecci attaches a detailed exhibit regarding hours billed to which he objects and states that there are other smaller blocks of time not noted in his exhibit to which he would object. Sheriff Canarecci argues that the 391.5 hours he identified reference only Madison Center and Memorial Home Care defendants and also represent overbilling for depositions. Sheriff Canarecci also objects to 123.95 hours of attorney time expended for Dr. Gutierrez, whose testimony the court excluded because he made legal conclusions without supplying the methodology of his analysis.

Sheriff Canarecci doesn't dispute that the plaintiffs are the prevailing party, by virtue of the settlement. He also doesn't dispute the hourly rates that the plaintiffs' attorneys are charging. He objects to the number of hours claimed as not being reasonably expended in this litigation, and he objects to what he considers to be an arbitrary effort to redact the bills to encompass efforts expended only on claims related to Sheriff Canarecci. He argues that these unrelated hours should be excluded from the lodestar, and that a more reasonable lodestar would be 1/3 of the total unredacted bill because 1/3 would be attributable to Memorial Home Care defendants, 1/3 attributable to Madison Center defendants, and 1/3 attributable to St. Joseph County defendants. He argues that the lodestar should then be reduced to reflect the plaintiffs' level of success in this lawsuit. He suggests that $75,000 is a severe undervaluation of this case, and he attaches a letter from plaintiffs indicating that a $9 million jury award in another case is "instructive" of the liability that defendants faced in this case. *See* Exh. A, Def.'s Memo. of Law in Opp. to Plfs' Supp. Petn. for an Award of Fees and Costs, Jan. 29, 2010 [Doc. No. 220]. In the alternative, Sheriff Canarecci argues the court should abandon the lodestar altogether because only nominal damages were recovered here.

Finally, Sheriff Canarecci describes the circumstances behind the settlement. The offer of judgment was made on May 19, 2009. A final pretrial conference was held on May 26, 2009. Trial was set to begin on June 8, 2009. Sheriff's counsel had objected to expert opinions to be offered by Dr. Leenaars and

Dr. Kennedy, on the same grounds on which Dr. Gutierrez's testimony had been excluded. The court took these objections under advisement at the pretrial conference. The plaintiffs accepted the offer of settlement on May 29, 2009.

The plaintiffs reply that at the time of their supplemental submission they had removed 26 percent of the time expended by Hoeppner Wagner & Evans from the bill, and 10 percent of the time expended by Konopa & Reagan. They reply that much evidence relevant to Sheriff Canarecci had to be obtained from Memorial and Madison Center sources. The plaintiffs reply to some of the Sheriff's objections by deducting another $7,927 from their bill, but they argue that the factual overlap of the case renders the rest of the hours properly billed.

## II. Discussion

As the court explained in its previous order, the applicable legal principles for awarding attorney fees to partially successful plaintiffs are contained in Hensley v. Eckerhart, 461 U.S. 424 (1983). Subsequent opinions strongly affirm the Hensley analysis.[3] This inquiry involves two steps. The starting point is the lodestar, which is the number of hours reasonably expended multiplied by the

---

[3] *See, e.g.*, Farrar v. Hobby, 506 U.S. 103, 574-575 (1992) (using Hensley as a starting point to find that attorney fees for nominal damages award should not be granted); City of Riverside v. Rivera, 477 U.S. 561, 567-569 (holding that, where plaintiffs obtain excellent results, attorney fees should be awarded for work done on related but unsuccessful claims); Gastineau v. Wright, 592 F.3d 747, 748-749 (7th Cir. 2010); Bryant v. City of Chicago, 200 F.3d 1092, 1101-1102 (7th Cir. 2000); Johnson v. Kakvand, 192 F.3d 656, 662 (7th Cir. 1999); Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 557-559 (7th Cir. 1999); Strange v. Monogram Credit Card Bank of Georgia, 129 F.3d 943, 945-946 (7th Cir. 1997); Spellan v. Board of Educ. for Dist. 111, 59 F.3d 642, 645-646 (1995); Estate of Borst v. O'Brien, 979 F.2d 511, 515-516 (7th Cir. 1992); Ustrak v. Fairman, 851 F.2d 983, 988-989 (7th Cir. 1988); Spanish Action Comm. of Chicago v. City of Chicago, 811 F.2d 1129, 1133 (7th Cir. 1987); Tomazzoli v. Sheedy, 804 F.2d 93, 97 (7th Cir. 1986); Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc., 776 F.2d 646, 652-653 (7th Cir. 1985).

reasonable hourly rate. The lodestar should not include hours wholly unrelated to the successful claims. In suggesting a lodestar, plaintiffs should exercise billing judgment, charging their opponent what they would charge a client. When the lodestar contains reasonable hours and reasonable hourly rates, it is presumptively (but not irrebuttably) reasonable. *See* <u>Hensley v. Eckerhart</u>, 461 U.S. at 433-434.

After determining a lodestar, the court may adjust the lodestar according to various factors, one of the most important of which is the relation between hours reasonably expended and the significance of the overall relief obtained by the plaintiffs in the litigation. Another important factor is the vindication of constitutional rights and the public benefit attained through the litigation. This adjustment shouldn't be done as a matter of arithmetic proportionality (for example, between the award demanded and the award actually obtained), but the court, in light of its experience with the litigation, can and should exercise its discretion in taking into account the level of success attained by the plaintiffs. *See* <u>Hensley v. Eckerhart</u>, 461 U.S. at 434-437.

> If . . . a plaintiff has achieved only partial or limited success, the [lodestar] may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

<u>Id.</u> at 436.

*a. First Part of <u>Hensley</u> analysis: determining the lodestar.*

Sheriff Canarecci agrees with the court's previous order that by virtue of the settlement of one claim against one defendant, the plaintiffs are the prevailing party. *See, e.g.*, <u>Farrar v. Hobby</u>, 506 U.S. 103, 111 (1992) (holding that to qualify as a prevailing party the "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." (citation omitted)). But Sheriff Canarecci argues that the relief obtained was so low that attorney fees aren't even appropriate. Because the degree of a plaintiff's overall success is the most critical factor in determining the reasonableness of a fee award, when only nominal damages are attained the only reasonable fee is usually no fee at all. <u>Farrar v. Hobby</u>, 506 U.S. at 114-115. However, this "no fees" holding only applies when a damages award is nominal. *See* <u>Estate of Enoch v. Tienor</u>, 570 F.3d 821, 823 (7th Cir. 2009) ("In cases in which the recovery is not merely nominal . . . the <u>Farrar</u> analysis is not relevant.").

Sheriff Canarecci also suggests that the lodestar presented by plaintiffs here is inappropriate because the hours billed involve much work unrelated to the successful claim against him. In reviewing the bills submitted, it is apparent to the court that if it performed a line by line audit of the bill, the court would find duplicative and excessive hours-billed. Further, some work is more related to the successful claim against Sheriff Canaerecci than other work performed, and much of the work would fall at the outer edges of what could be considered "related to" the claim against the Sheriff. Nonetheless, the court has no obligation to audit so

8

large a bill line by line. Further, the plaintiffs can charge for unsuccessful but related claims, and the court isn't aware of any fair system to determine how to weight the relatedness of claims in the lodestar, perhaps because such a process would be too burdensome for courts to routinely employ. The court of appeals has stated clearly:

> For tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. The lawyer has no right to advance a theory that is completely groundless or has no factual basis, but if he presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.

Spanish Action Comm. of Chicago v. City of Chicago, 811 F.2d 1129, 1133 (7th Cir. 1987) (quoting Lenard v. Argento, 808 F.2d 1242, 1245 (7th Cir. 1987)).

The plaintiffs have reduced their bill on their own by about a fourth to remove state-law claims wholly unrelated to Sheriff Canarecci. This effort suffices for purposes of the lodestar so that the court can avoid double-counting other factors it takes into account in the second part of the Hensley analysis. *See* Spanish Action Comm. of Chicago v. City of Chicago, 811 F.2d at 1137 (finding error where district court took into account limited success of litigation both in calculating lodestar and in applying downward adjustment to lodestar); *see also* Ustrak v. Fairman, 851 F.2d 983, 988-989 (7th Cir. 1988) (reducing fee award in second part of Hensley analysis by 50% where claims were unrelated to successful claim but much of counsel's time was necessarily devoted to litigation as a whole

9

so counsel should be compensated for what it would have cost to bring the one successful claim).

*b. Second part of <u>Hensley</u> analysis: relation of hours reasonably expended to degree of success obtained.*

The plaintiffs haven't obtained all that they reasonably could have asked for in this case. "Where the plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount . . . is likely to be excessive. The Supreme Court therefore provided: 'A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.'" <u>Spanish Action Comm. of Chicago v. City of Chicago</u>, 811 F.2d at 1133 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 440). In this situation, the court may either try to identify specific hours that should be eliminated or reduce the award across the board to account for the limited success. <u>Hensley v. Eckerhart</u>, 461 U.S. at 436-437; <u>Bryant v. City of Chicago</u>, 200 F.3d 1092, 1101-1102 (7th Cir. 2000); <u>Spellan v. Board of Educ. for Dist. 111</u>, 59 F.3d 642, 646 (7th Cir. 1995); <u>Spanish Action Comm. of Chicago v. City of Chicago</u>, 811 F.2d at 1133 (citing <u>Hensley v. Eckerhart</u>, 461 U.S. at 440)).

In response to the court's concerns about the relation between the plaintiffs' efforts and the level of their success, the plaintiffs state that <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 568 (1986), holds it is not appropriate to use this degree-of-

success factor to reduce an award when a common core of facts and related legal theories apply to all claims. The language cited states:

> This figure, commonly referred to as the 'lodestar,' is presumed to be the reasonable fee contemplated by § 1988. The [Hensley] opinion cautioned that the district court . . . should exclude from this initial fee calculation hours that were not reasonably expended on the litigation.
>
> Hensley then discussed other considerations that might lead the district court to adjust the lodestar figure upward or downward, including the important factor of the results obtained. The opinion noted that where a prevailing plaintiff has succeeded on only some of his claims, an award of fees for time expended on unsuccessful claims may not be appropriate. In these situations, the Court held that the judge should consider whether or not the plaintiff's unsuccessful claims were related to the claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award attorney's fees for hours reasonably expended on unsuccessful claims:
>> "In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

City of Riverside v. Rivera, 477 U.S. at 568-569 (citations and quotations omitted, and quoting Hensley v. Eckerhart, 461 U.S. at 435).[4] City of Riverside doesn't alter Hensley in the way the plaintiffs argue. The language plaintiffs focus on goes to

---

[4] The City of Riverside Court addressed a fact situation in which a jury returned thirty-seven individual verdicts in favor of the plaintiffs, finding eleven violations under 42 U.S.C. § 1983, four instances of false arrest, and twenty-two instances of negligence. The jury awarded plaintiffs compensatory and punitive damages: $13,300 for federal claims and $20,050 for state-law claims. The Court affirmed compensation for attorneys for 1,946.75 hours expended by two attorneys and law clerks, totalling $245,456.25. The court implied that these results (jury verdict and punitive damages included) were "excellent" and therefore merited a full award, including compensation for work on unsuccessful claims. City of Riverside v. Rivera, 477 U.S. at 569.

the first step of Hensley: related but unsuccessful claims can be compensated in attorney fee awards. This is distinct from the second Hensley step also reaffirmed in City of Riverside: in light of various factors, most especially the degree of success attained by the plaintiffs, the lodestar may need to be adjusted to produce a reasonable attorney fee award.

Many factors can go into characterizing the limited success of a litigation, including the lack of punitive damages attained, Spanish Action Comm. of Chicago v. City of Chicago, 811 F.2d at 1134-1135, and the lack of external or public benefit arising from the litigation, id. at 1135-1136. When equitable relief will benefit the public, the amount of money damages becomes far less important, but where damages are the lawsuit's primary goal, the amount of damages becomes relevant to gauge the success of the lawsuit. *See* Johnson v. Kakvand, 192 F.3d 656, 662 (7th Cir. 1999).

The plaintiffs argue one factor that shouldn't go into the court's consideration is the mathematical proportion between the attorney fees sought and the size of the damages award obtained. The plaintiffs are correct about this, and plaintiffs often obtain attorney fee awards larger than their damages awards. *See, e.g.*, Anderson v. AB Painting and Sandblasting, Inc., 578 F.3d 542, 545 (7th Cir. 2009). But such improper mathematical proportionality analysis differs from the analysis of Hensley, which considers the relief obtained in light of the litigation as a whole: what results were obtained in light the scope of the litigation? Under Hensley, a low degree of success doesn't require a reduced fee award, Robinson

12

v. City of Harvey, 489 F.3d 864, 872 (7th Cir. 2007), but it is within the court's discretion to lower a fee award from the lodestar amount to account for the limited success attained in light of the huge effort put into a lawsuit.

The plaintiffs claim that far-reaching public benefit has been attained because the St. Joseph County Jail previously had only unlicensed individuals visiting to assess mental illness and suicidality, but the jail now has a psychiatrist in attendance. The lack of official psychiatry degrees by mental health assessors is not where any constitutional violation would lie because it sufficed that persons from Madison Center who were making such assessments had experience and training, even if not a formal license. *See* Minix v. Canarecci, Nos. 09-2001 & 09-2817, 2010 WL 668893, at *5 (7th Cir. Feb. 26, 2010). Further, the plaintiffs suggest that nurses now receive training on suicide prevention. That may be true, but whether nurses are trained in suicide prevention doesn't go to the issue that survived summary judgment as a potential constitutional violation. The court found that despite the jail's policy for handling potentially suicidal detainees and inmates, the evidence then available suggested that a jury could find that the policy was not followed (specifically, that two of the listed individuals must review a change in status level of a detainee or inmate). Op. and Ord., July 3, 2007, at 30 [Doc. No. 137]. Also, no equitable relief requires the jail to enhance its compliance with its own policy.

The lesson of Hensley and City of Riverside is that private attorneys are to be awarded compensation for successfully bringing meritorious claims that

vindicate violations of constitutional rights for private plaintiffs and for the public. When a litigation is large and wide in scope, in which non-meritorious claims are brought (even if related to meritorious claims), in which meritorious claims are only partially successful, and in which relief obtained does not benefit the public, full attorney fee awards may be excessive.

A full attorney fee award in this case would be excessive. A single claim against a single defendant had potential merit and survived summary judgment. Before a jury could determine that claim's merit the parties settled for $75,000. That settlement is not nominal by any stretch of the imagination, but neither does it appear to be much more than a nuisance settlement. *See, e.g.*, Estate of Enoch v. Tienor, 570 F.3d 821 (7th Cir. 2009) (estate of prisoner who committed suicide settled for $635,000); Zaragoza v. Dallas County, No. 3:07-CV-1704-K, 2009 WL 2030436, at *13 (N.D. Tex., July 13, 2009) (citing recent jury awards regarding jail conditions in Dallas county, including $355,000 judgment, $890,000 judgment plus $255,000 in attorney fees, $950,000 reported settlement, and a consent decree). No punitive damages were awarded. The court of appeals has affirmed this court's grant of summary judgment on all other federal claims. Little, if any, public benefit has been attained and the settlement provides only private benefit to the plaintiffs.

The plaintiffs' revised attorney fee request amounts to $466,093.25 for Hoeppner Wagner & Evans and $67,013.50 for Konopa & Reagan, for some 4,000 hours of combined law firm effort in this case. Their efforts reflect the broad scope

of the litigation, but the vast majority of the litigation, however "related" to the successful claim against the Sheriff, now resides in state court[5] or has been dismissed. By itself, the "successful" claim against the Sheriff is somewhat limited in its degree of success; in the context of the broad scope of this litigation, the "successful" claim against the Sheriff is extremely limited in its degree of success. Clients that would pay lawyers $700,000 to obtain a $75,000 damages award and nothing more seem few and far between.

In light of these considerations, an award of 15% of the combined requested attorney fees ($533,106.75), which amounts to $79,966.01, is reasonable to compensate the attorneys for their successful work and to avoid a windfall for bringing a lawsuit so wide in scope and effort that, under clearly established principles of law, had little merit, and for settling on a potentially successful claim for what amounts to a nuisance sum. This award accounts for the work that was required to determine where constitutional rights were perhaps violated, and it accounts for excessive and duplicative efforts expended on non-meritorious aspects of the lawsuit. The award further accounts for time spent preparing for trial against Sheriff Canarecci (350.2 hours in 2007 and 2009, by the court's evaluation), but also for the decision to forgo trial in favor of a nuisance settlement. Finally, the award accounts for prejudgment interest.

---

[5] Even the state law claims face an uphill battle. An Indiana medical review panel, *see* IND. CODE § 34-18-8-4, found that Nurse Kirchner's conduct failed to meet the requisite standard of care but was not a cause of Gregory's death. The panel found that all other medical defendants met the requisite standard of care. *See* Rept. Regarding Op. of Med. Rev. Panel, Aug. 27, 2007 [Doc. No. 159].

The plaintiffs request $127,375.80 in fees for experts. The court disqualified one of the experts before trial, and took under advisement the Sheriff's motion to disqualify Dr. Kennedy. The work of the experts goes to state law and unsuccessful claims, for an expert would not be needed to tell a jury that Nurse James didn't confirm her decision with other jail officials to remove Gregory from suicide watch as required by the jail's policy, or that Nurse James wasn't, in practice, required to so confirm her decision. At trial, the plaintiffs might have used experts to establish Gregory's suicidal tendencies and might have tried to establish the jail staff's lack of training to deal with those tendencies. This use of experts would have been tangential to the triable issue of the Sheriff's responsibility for the jail's failure to follow its own policy. Therefore, the court declines to award expert fees to the plaintiffs.

The plaintiffs also request $28,675.37 in costs. For the reasons that the court awards 15% of the requested attorney fees, the court awards 15% of the requested costs, which amounts to $4,301.31.

Finally, the plaintiffs request a hearing on their supplemental motion for attorney fees. The plaintiffs' position in their first and supplemental motions is quite clear, and the plaintiffs have had an opportunity to respond both to the court's concerns and to the defendant's objections. No hearing is necessary. *See, e.g.*, Estate of Borst v. O'Brien, 979 F.2d 511, 514 (7th Cir. 1992) ("We can think of few matters more wasteful of judicial resources than ancillary litigation over an attorneys' fee award.").

III. CONCLUSION

In summary, the plaintiffs' supplemental motion for attorney fees [Doc. Nos. 216, 218] is GRANTED in part and DENIED in part. The court awards the plaintiffs $79,966.01 in attorney fees ($69,913.99 to Hoeppner, Wagner & Evans LLP and $10,052.02 to Konopa & Reagan, P.C.), $4,301.31 in costs, and zero fees for experts. The plaintiffs' motion for hearing [Doc. No. 217] is DENIED as unnecessary.

SO ORDERED.

ENTERED: March 12, 2010

/s/ Robert L. Miller, Jr.
Judge
United States District Court